| | |
|---|---|
| 1 | CRAIG H. MISSAKIAN (CABN 125202)<br>United States Attorney |
| 2 | |
| 3 | MARTHA BOERSCH (CABN 126569)<br>Chief, Criminal Division |
| 4 | |
| 5 | JONAH P. ROSS (CABN 305076)<br>Assistant United States Attorney |
| 6 | 1301 Clay Street, Suite 340S<br>Oakland, California 94612 |
| 7 | Telephone: (510) 637-3680<br>FAX: (510) 637-3701 |
| 8 | jonah.ross@usdoj.gov |
| 9 | Attorneys for United States of America |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) NO. 4:24-CR-00570 JST |
|---|---|
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| NAIKANO TUIPULOTU, | ) Date: January 23, 2026<br>) Time: 9:30 a.m. |
| Defendant. | ) Judge: Hon. Jon S. Tigar |

| | |
|---|---|
| 1 | **INTRODUCTION** |
| 2 | From October 23, 2023 to January 13, 2024, defendant Naikano Tuipulotu robbed three banks |
| 3 | and attempted to rob two others in Alameda County. During each of these incidents, Tuipulotu |
| 4 | produced a handwritten demand note to the victim bank teller, and in all but one incident, he claimed to |
| 5 | be carrying a gun. At the time he committed each of these crimes, Tuipulotu was already on parole |
| 6 | following a state prison sentence for two robberies, including a bank robbery and a separate armed |
| 7 | robbery with a firearm. Tuipulotu has pleaded guilty to two counts of Bank Robbery in violation of |
| 8 | 18 U.S.C. § 2113(a). |
| 9 | For the reasons set forth below, the government requests that the Court sentence Tuipulotu to |
| 10 | 75 months imprisonment on Counts One and Two, to be served concurrently, to be followed by three |
| 11 | years of supervised release. |
| 12 | **BACKGROUND** |
| 13 | **A. Offense Conduct and Prior Related Conduct** |
| 14 | **1. In late 2023 and Early 2024, Tuipulotu Robbed Three Banks and Attempted to Rob Two Others** |
| 15 | |
| 16 | On the morning of October 23, 2023, Tuipulotu entered the Chase bank located at 1601 E 14th |
| 17 | Street, San Leandro, CA. Presentence Investigation Report ("PSR") ¶ 10. Wearing a black hooded |
| 18 | sweatshirt with the word "Cookies" printed on the front, Tuipulotu approached a bank teller and handed |
| 19 | her a note that read, "I have a gun give me the money!!" *Id.* Fearing for her safety, the bank teller |
| 20 | walked toward the bank's vault and then crawled on her hands and knees to draw the attention of other |
| 21 | bank employees. Tuipulotu fled the bank without acquiring any money and left behind the note. |
| 22 | Roughly one minute later, Tuipulotu entered the Bank of the West branch located at 1601 |
| 23 | Washington Avenue, San Leandro, CA, which is a short walk from the Chase bank Tuipulotu had just |
| 24 | attempted to rob. PSR ¶ 7. (This robbery is the basis for Count 1 of the Information.) Wearing the |
| 25 | same attire as in the earlier attempted robbery, Tuipulotu passed another handwritten note to a bank |
| 26 | teller, this one reading, "I have a gun give me the money." *Id*. Out of fear that the suspect might harm |
| 27 | her, the bank teller gave the suspect $210.00 in cash. Tuipulotu then stated, "That's all you have? |
| 28 | You're a bank. Give me all the money in the vault." *Id.* After the teller informed him that she did not |

have access to the vault, Tuipulotu took the money from the teller and then fled. *Id.* Once again, Tuipulotu left behind the handwritten note. *Id.*

On November 9, 2023, at approximately 3:42 p.m., Tuipulotu entered the Patelco Credit Union branch located at 24703 Amador Street, Hayward, CA. PSR ¶ 11. Wearing the black "Cookies" hooded sweatshirt, Tuipulotu handed to a bank teller a note reading (to the best of the bank teller's recollection), "This is a robbery. This will be over soon." *Id.* The teller asked Tuipulotu what he wanted, and he replied, "I'm robbing you." *Id.* Not knowing if Tuipulotu was armed, the teller felt "freaked out" and "anxious." *Id.* She handed him a "bait bundle" (cash with known serialized numbers) with $200 in cash. *Id.* She also handed Tuipulotu an additional $10 from the drawer, for a total of $210.00. *Id.* Tuipulotu took the money and his note and left the bank. *Id.*

On January 6, 2024, at approximately 11:27 a.m., Tuipulotu walked into the Citibank branch located at 46801 Warm Springs Boulevard, Fremont, CA. PSR ¶ 8. (This robbery is the basis for Count 2 of the Information.) Wearing the "Cookies" sweatshirt, Tuipulotu approached a bank teller and handed her a handwritten note which stated, "This is a robbery. I have a gun. Give me all the $$ money $$." *Id.* The teller walked to the back room and informed her colleague of what had occurred. *Id.* The colleague told the teller to press the bank's silent alarm button. *Id.* Tuipulotu then requested the teller to come back to the counter and upon her return, she pressed the silent alarm. *Id.* Tuipulotu asked the teller what was taking so long and told her to provide the money from first and second drawers. *Id.* The teller handed a total of approximately $1,370.00 in cash to Tuipulotu, who then fled through the front entrance doors, leaving behind the demand note. *Id.*

On January 13, 2024, at approximately 12:12 p.m., Tuipulotu walked into Wells Fargo Bank located at 1172 A Street in Hayward, CA. PSR ¶ 12. Wearing the "Cookies" hooded sweatshirt, Tuipulotu approached a window and asked a bank teller for cash. *Id.* He then slid a handwritten note to the teller which read, "Do not cause a scene. I have a gun. This is a robbery." *Id.* The teller did not see a firearm, but she believed Tuipulotu was armed and feared for her safety. *Id.* Because the teller's hands were shaking too much, she was unable to unlock her register to withdraw cash. *Id.* The teller then activated the silent alarm at her teller window. *Id.* Ultimately, Tuipulotu declined to wait any longer and left the bank without receiving any cash. *Id.*

**B. Prior Relevant Criminal Conduct**

In 2017, Tuipulotu was sentenced to six years in prison following convictions for two robberies committed in April of 2016. PSR ¶ 47. During the first of these incidents, Tuipulotu robbed a 7-11 store after jumping over the counter with a firearm in his hand. *Id*. Tuipulotu pointed the firearm at the store employee. *Id*. Tuipulotu took the store's money and then fled. *Id*.

During the second of these incidents, Tuipulotu robbed a Chase Bank in San Leandro. PSR ¶ 12. Tuipulotu appeared to simulate a carrying a weapon in his jacket and stated to the bank teller, "Nobody is to move." *Id*. Tuipulotu demanded cash from the teller, which he placed into a stocking before felling the bank. *Id*.

At the time of the instant offenses, Tuipulotu was on parole following his release from prison.

**C. Procedural History and Tuipulotu's Performance While Released From Custody**

On February 7, 2024, Tuipulotu was charged by Complaint with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). PSR ¶ 1, Dkt. 1. On November 12, 2024, the government filed a two-count Information charging Tuipulotu with two counts of bank robbery. PSR ¶ 2, Dkt. 49. On February 28, 2025, pursuant to a plea agreement, Tuipulotu pleaded guilty to both counts in the Information. PSR ¶¶ 3-4, Dkt. 58-59.

On August 8, 2024, Tuipulotu was released over the government's objection to New Bridge Foundation to participate in their residential treatment program. PSR ¶ 77, Dkt. 39. Tuipulotu successfully completed the 90-day program and continued to reside at New Bridge while he awaited bed space in their sober living housing. *Id*. Tuipulotu reported that he began to question why he needed to continue attending treatment if he had already completed the program. *Id*. After transitioning to sober living housing, Tuipulotu was terminated from the housing due to behavior issues. *Id*. Ten days later, after being ordered to reside at a halfway house, Tuipulotu left without permission and was immediately terminated. *Id*. A warrant issued, and Tuipulotu was arrested four days later. *Id*.

Tuipulotu was again released over the government's objection to Cronin House on May 23, 2025. PSR ¶ 78. Five weeks later, he was terminated following an argument with staff and a verbal altercation with a fellow participant. *Id*. He was subsequently remanded to custody. *Id*

# DISCUSSION

## A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## B. Sentencing Guidelines Calculation

As set forth in the Plea Agreement, the Sentencing Guidelines calculation for Tuipulotu's offense level is as follows:

| | |
|---|---|
| **COUNTS 1 AND 2: BASE OFFENSE LEVEL** (U.S.S.G. § 2B3.1) | 20 |
| **SPECIFIC OFFENSE CHARACTERISTICS** | |
| **Property of financial institution taken** (U.S.S.G. § 2B2.1(b)(1)) | +2 |
| **Threat of death made** (U.S.S.G. § 2B3.1(b)(2)(F)) | +2 |
| **COMBINED OFFENSE LEVEL** (U.S.S.G. § 3D1.4(a)) | +2 |
| **Acceptance of responsibility** (U.S.S.G. § 3E1.1) | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **23** |

The Government agrees with the PSR that Tuipulotu's Criminal History Category is V, leading to a sentencing guidelines range of 84-105 months in custody.

### C. The Government Recommends 75 Months of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a **custodial sentence of 75 months** (to be served concurrently on Counts One and Two) to be followed by a three-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offenses, to provide just punishment and protect the community, and to account for both the aggravating and mitigating factors present in this case.

Tuipulotu's five separate acts of robbing or attempting to rob banks were serious and dangerous, and they merit a lengthy custodial sentence. During at least four of these incidents, Tuipulotu handed to the bank teller a note indicating that he had a gun. By making these threats, Tuipulotu intended for his victims to understand that, if they did not comply, they would be killed. These threats—which caused the bank tellers to reasonably fear for their lives—magnify the seriousness of these offenses. A considerable custodial sentence is necessary to deter both Tuipulotu and anyone in the public who believes robbing a bank by threatening to kill the bank's employees is a risk worth taking.

A meaningful custodial sentence is also necessary because Tuipulotu's history of committing robberies predates these five offenses. At the time he committed these offenses, Tuipulotu was on parole following a six-year prison sentence for two robberies, including a bank robbery and a separate convenience store robbery, during which Tuipulotu brandished a firearm. PSR ¶ 47. Neither a prior lengthy prison sentence nor the close supervision of parole was sufficient to prevent Tuipulotu to reoffend. Given the conduct in this case and Tuipulotu's history, a meaningful custodial sentence is necessary to protect the community.

In reaching its recommendation, the government has considered not only these serious aggravating factors, but also the mitigating factor present in this case. As the PSR explains, Tuipulotu appears to have a history of mental illness and drug abuse, which has gone largely untreated until recently. PSR ¶¶ 71-72, 74. The causal relationship between his mental illness/drug abuse and criminal

conduct, however, is unclear, and his commitment to addressing these issues is uncertain. Following his arrest in this case, Tuipulotu was released to various treatment facilities and halfway houses, where he showed some success, but also an inability to consistently follow rules or commit to his treatment. PSR ¶¶ 77-78. The government's sentencing recommendation accounts both for the likelihood that Tuipulotu's untreated substance abuse and mental health issues may have contributed to his commission of theses offenses, as well as his apparently inconsistent commitment to addressing these issues.

A custodial sentence of 75 months—nine months below the low end of the applicable guidelines range—is sufficient, but not greater than necessary, taking into account the factors set forth in 18 U.S.C. § 3553(a). As described above, Tuipulotu's crimes were serious, caused real harm to businesses and their employees who were threatened with death, and they merit a lengthy sentence. And these crimes were not an aberration; rather, they were consistent with similar past conduct by Tuipulotu. A sentence of 75 months would also serve the general and specific deterrence goals of § 3553 by signaling both to Tuipulotu and to potential offenders that robbing banks by making death threats will not be tolerated, especially by someone who has a demonstrated history of similar conduct.

## CONCLUSION

For the foregoing reasons, with full consideration of the Sentencing Guidelines, the goals of sentencing, and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Defendant Naikano Tuipulotu to a sentence of **75 months of imprisonment** on Counts One and Two, to be served concurrently, to be followed by three years of supervised release.

DATED: January 16, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 /s/
JONAH P. ROSS
Assistant United States Attorney